Ruffin, C. J.
 

 The bill alleges, that in September, 1836, the plaintiff’s intestate and the defendant formed a co-partnership to purchase and sell slaves on speculation, on the following terms: Hardy Jones was to advance the sum of $3350, and the defendant one third part as much, as capital; and tbe defendant was to invest the same and carry the slaves
 
 *333
 
 to the south-west for sale, pay all expenses out of his own et, and divide the profits equally between the parties; that, accordingly, Hardy Jones advanced the said sum, and that the defendant purchased slaves on the joint account and sold them in Alabama and made great profits; and, that Hardy died in August, 1837, before receiving any part of his capital or profits, or any settlement having been made between the parties. The bill is brought by the plaintiff, as administrator of Hardy Jones, for an account of the partnership and payment of the sum found due from the defendant.
 

 The answer denies the agreement to have been such as that stated in the bill. But it admits that Hardy Jones did advance the sum of $3350, for which the defendant gave him a note; and that it was agreed between them, that, with that sum and the sum of $1377 (which the defendant had,) slaves should be purchased and sold by the defendant, and that, after defraying all the expenses of the business out - of the joint funds, and re-imbursing to each of the parties the sum advanced by him, the surplus should, as profits, be divided. The answer then states that the defendant made a purchase and sales of negroes, and, about Mayor June, 1837, paid to the intestate the sum of $2200 in part of the capital sum of $3350, for which the defendant gave his note, and which, he says, he considered was loaned to him, and that the defendant then paid the further sum of $1000, as Hardy’s one half of the profits, after deducting the'expenses; with which Hardy expressed himself satisfied, and, upon the receipt of which, each party considered the accounts of the partnership settled, and that the defendant remained indebted only on his note for the balance due thereon. The answer further states that the expenses were $501, 65 ets.; but that in the settlement the defendant had credit only for the sum of $149 on that account, as he did not insist on more against the said Hardy who was his uncle and friend, and that therefore he had over paid the intestate. And the answer then states, that, for these reasons and because there was no written agreement of co-partnership between the parties, the settlement was not reduced to writing, nor any receipt taken for the said sum of $1000, the payment of which, however, the answer positively avers.
 

 
 *334
 
 By consent the parties- made a reference to the master to state the account between them, but without prejudice. The master made his report and the defendant took exceptions thereunto, and the cause was then removed to this court. It is now brought on, upon the report and exceptions.
 

 The master finds the partnership, and that the capital of the plaintiff's intestate, to wit, $3350, has been paid, either before or pending the suit, and that the profits amounted to g28GQ, after deducting all expenses, of which one half belonged to the intestate, and the other half to the defendant. In ascertaining the profits, the master did not go into a particular account of the cost, and of the proceeds of the sales,' of the slaves, nor of the expenses, but charged the gross sum before mentioned, upon the testimony of several witnesses of the declarations of the defendant, that he made that amount of profit. The defendant’s first exception is. that the master has not allowed the defendant credit for the sum of $397 65 for necessary expenses. Upon looking into the depositions, we find the master’s report fully supported by the evidence, on which the master acted. It is proved by three witnesses, and these witnesses of the defendant, that, immediately after his return from the south-ward in May, 1837, he stated to each of them distinctly that, after deducting all expenses, he made $2800
 
 clear.
 
 If the plaintiff was satisfied with this, the defendant cannot complain that the master did not enquire further into the particulars, on which the profits would appear. Besides, the defendant gave no evidence to the contrary. The second exception is, that it was not referred to the master to enquire into the existence and terms of the partnership; and, therefore, that he has exceeded his power in finding them, and that, moreover, he has so found without sufficient or proper evidence. No part of this exception, we think, can be sustained. If there be not a co-partnership, the proper mode of contesting its existence would have been to bring the cause on for hearing; which might have been done, as the reference was without prejudice. But it cannot be reached in the manner here attempted, by bringing on the case for further directions on the master’s report and exceptions; for a reference to take the ao
 
 *335
 
 counts in this case necessarily imports, that the partnership is established, since that is the only account sought. And in taking it the master must enquire into the terms, that is to say, the capital to be advanced, and the services to be rendered by each, and the division of the profits, in order to ascertain the balance between the parties. Therefore, the reference to the master obliged him to assume, for the purposes of the reference, the existence of a copartnership; and, to enable him to state
 
 the
 
 account truly between the parties, to ascertain the terms of it. But in reality, the point is not disputed between the parties; and, if the question were made upon a hearing of the cause, it would be decided against the defendant upon the answer. That distinctly admits an advance of capital on each side, an agreement for its management, for the payment of the charges out of the joint funds, and for a division of the profits; and all this can amount to no less than a partnership. It is true, in one part of the answer it is said, that the defendant considered the sum advanced by Hardy Jones was lent to the defendant. But that is not stated as any part of the agreement between the parties, but only as an inference of the defendant from the fact, that he gave his note for that sum. That, however, does not convert the transaction into a loan, when it is seen from other parts of the answer, that it was not, in fact, a loan of money on interest, but was an advance of capital for carrying on a joint business. It does not. indeed, appear in the proceedings, when the note was payable; so that the transaction is open to the objection that the intestate was, by the forms under which the parties acted, getting both interest on his capital and profits on bis investment. Certainly that would not be allowed. If the intestate resorted to this method, namely, the forming of an apparent partnership, as a cover to vade the statuie of usury, the court could give his administrator no relief. But no such defence is even intimated in the answer. On the contrary, we must take the ease to have been, that the parties meant no shift but a real partnership, and, therefore, there could be no usury in it.
 
 Gilpin
 
 v.
 
 Enderby,
 
 5 Barn. & Ald. 954. The only question then would be, whether the intestate, receiving a part of the profits,
 
 *336
 
 could also claim interest on his advance, even if the note, taken'for it, would, by its terms, carry interest. And upon that we should clearly think
 
 not
 
 — Brapley v.
 
 Holmes,
 
 2 Molloy, 1 — at least till the parties settled,
 
 and
 
 a balance was found due to the intestate from the defendant, which was not paid, and for' which the note was considered as standing as a security from that time. But there is no exception, presenting the case to the court in either of those aspects; and that under consideration merely draws into question the existence of the co-partnership, as to which the answer contains an explicit admission oí vrhat the Court must hold to be a co-partnership.
 

 The third exception is, that the master has divided the profits equally between the parties, without evidence how they were to be divided according to the agreement. The answer io this is, in the first place, that, in the absence of a stipulation in the articles, the law divides losses and profits equally between partners, upon the ground that equality is equity; and, in the next place, that the answer states that such was the agreement in this case.
 

 The fourth exception is, that the master has not given the defendant credit for the sum ot glOOO, as having been paid to the intestate, in full of or on account of his profits, as stated in the answer. Of such paymentno evidence is given by the defendant, unless the answer be evidence for him. But we think it is not. There is no' allegation in the bill, nor interrogatory Upon the supposed payment under consideration, to which that part of the answer can be deemed responsive. The plaintiff does not make the defendant his witness on that point, and therefore is not bound by his answer. But the defendant brings forward the fact, as matter of avoidance and distinct discharge of an admitted liability; and in such a case the rule is settled, that the answer by itself does not establish the discharge; but it must be proved
 
 aliunde.
 

 The exceptions must therefore all be overruled, and the report confirmed, and a decree accordingly for the plaintiff with costs.
 

 Per, Curiam, Decree accordingly.